TAYLOR, Presiding Judge.
The appellant, Billy Eugene Jones, was convicted of unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Code of Alabama 1975, driving under the influence of alcohol, a violation of § 32-5A-191, Code of Alabama 1975, and driving on the wrong side of the road, a violation of § 32-5A-80, Code of Alabama 1975. He was sentenced to 10 years in the penitentiary pursuant to the Habitual Felony Offender Act for unlawful possession of marijuana and to six months in jail for driving under the influence of alcohol (that sentence to run concurrently with the sentence for unlawful possession), and he was fined $100 for driving on the wrong side of the road.
The state’s evidence tended to show that on November 4, 1993, Deputy Mark Anderson and Reserve Deputy Laron Brown of the Covington County Sheriffs Department received a call to proceed to the Babbie *983 Quick Stop convenience store in Babbie. Anderson testified that he was given a description of a dark-colored Jeep- or Bronco-type vehicle and a license plate number. As Anderson was turning off County Road 77 onto County Road 42, he saw a black International Scout vehicle and the license plate number matched the number he had been given. Anderson testified that as he approached the vehicle from behind, it crossed the yellow centerline into the left lane and then returned to the right lane. Anderson said that he then turned on the blue lights on his patrol car to try to get the appellant to stop the vehicle. The appellant drove for several hundred more yards and then pulled off the road into a ditch, and continued to drive approximately 40 yards before he stopped. Deputy Lamar Fowler arrived on the scene to provide back-up for Anderson and Brown. Anderson testified that he walked up to the driver’s side of the appellant’s vehicle and asked the appellant for his driver’s license. The appellant could not produce a license, but he told Anderson that his name was Billy Jones. Anderson said that he asked the appellant to step out of the vehicle. Anderson testified that when the car door opened, he smelled a strong odor of alcohol and burned marijuana. Also, Anderson testified that the appellant’s eyes were red, that his speech was slurred, and that he appeared unsteady. The appellant was unable to successfully complete any field sobriety tests. Anderson then arrested the appellant for driving under the influence. Anderson and Brown searched the appellant and found a pack of rolling papers in his left shirt pocket. Deputy Fowler searched the appellant’s vehicle and found a plastic bag containing marijuana under the driver’s side floormat, two six packs of beer, and two hemostats, clamplike instruments, above the visor.
The appellant was taken to the Covington County jail, where Deputy Fowler performed an Intoxilyzer 5000 test to measure his blood alcohol content. The test indicated that the appellant’s blood alcohol level was .195 percent.
The appellant raises three issues on appeal.
I
The appellant first contends that the trial court erred in denying his motion for a judgment of acquittal as to all five counts of the indictment. However, we need not address Count II, unlawful possession of drug paraphernalia (§ 13A-12-260, Code of Alabama 1975), nor Count V, driving with a revoked license (§ 32-6-19, Code of Alabama 1975), because the appellant was found not guilty as to Count II, and his motion for a judgment of acquittal was granted as to Count V. An appeal lies only from a conviction. Gwin v. State, 425 So.2d 500 (Ala.Cr. App.1982), writ quashed, 425 So.2d 510 (Ala. 1983).
With regard to Count I, unlawful possession of marijuana conviction, the appellant contends that the state did not present sufficient evidence that he “knowingly” possessed the marijuana.
“In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253 (ALa.Cr.App.1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).”
Underwood v. State, 646 So.2d 692, 695 (Ala. Cr.App.1993).
“In order to find a defendant guilty of possession of a controlled substance, the state must establish that the accused was either in actual or constructive possession of the substance and that he knew of the presence of the substance. Jones v. State, 432 So.2d 5 (Ala.Cr.App.1983). ‘Constructive possession can be shown where the controlled substance was found on the premises controlled by the defendant, and guilty knowledge may by established by the surrounding facts and circumstances.’ Whitehead v. State, 429 So.2d 641, 643 (Ala.Cr.App.1982).... “The driver of an automobile is generally considered to be in *984 control of it. An inference of constructive possession, therefore, exists_ The requisite guilty knowledge of the illegal drug may be proved by circumstantial evidence. Blaine v. State, 366 So.2d 353 (Ala.Cr.App. 1978).... “When the presence of the accused at the scene is established and evidence of his knowledge of the prohibited substance is shown, along with any other incriminating evidence, the issue of the defendant’s guilt should be submitted to the jury.’ Radke v. State, 292 Ala. 290, 292, 293 So.2d 314, 316 (Ala.1974).... ”
Ward v. State, 484 So.2d 536, 537-38 (Ala.Cr. App.1985).
At the time of his arrest for unlawful possession, the appellant was alone in his vehicle and had exclusive control over it. Also, Deputy Anderson testified that he smelled burned marijuana inside the vehicle. The jury could have reasonably inferred that the appellant had been smoking marijuana while in his vehicle and that he therefore knew that marijuana was in the vehicle. The state presented sufficient evidence from which the jury could find the appellant guilty of unlawful possession of marijuana in the first degree. We will not substitute our judgment for that of the jury. Owens v. State, 597 So.2d 734, 737 (Ala.Cr.App.1992).
With regard to Count III, the state presented sufficient evidence from which the jury could find the appellant guilty of driving under the influence of alcohol. The deputies testified that when they stopped the appellant, he smelled of alcohol, his speech was slurred, and he appeared to be unsteady on his feet. He was unable to complete any sobriety tests. Furthermore, the results of his breath test indicated that his blood alcohol content was .195 percent. We will not substitute our judgment for that of the jury. Owens, 597 So.2d at 737.
Finally, with regard to Count IV, the state presented sufficient evidence from which the jury could find the appellant guilty of driving on the wrong side of the road. Both Deputy Anderson and Deputy Fowler testified that while he was traveling on County Road 42 the appellant crossed the yellow center line into the left lane.
II
The appellant next contends that the trial court erred in refusing to give two of the appellant’s requested jury charges.
“No party may assign as error the court’s giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.”
Rule 21.2, Ala.R.Crim.P.
The only ground the appellant stated in his objection to the trial court was that the refused instructions were “correct statements of case law and current ease law.” This court has repeatedly held that an objection that merely asserts that a refused jury charge is a correct or an accurate statement of law does not preserve the alleged error for appellate review. Morrison v. State, 601 So.2d 165, 178 (Ala.Cr.App.1992); Connolly v. State, 539 So.2d 436, 438 (Ala.Cr.App. 1988); Bogan v. State, 529 So.2d 1029, 1031 (Ala.Cr.App.1988). Therefore, the appellant’s argument is not preserved for our review.
III
The appellant contends that the trial court erred in overruling his chain of custody objection to the receiving into evidence of the marijuana, the hemostats, and the rolling papers. More specifically, he contends that the evidence was inadmissible because there was a “missing link” in the chain of custody as to these items.
In Ex parte Holton, 590 So.2d 918 (Ala. 1991), the Alabama Supreme Court stated:
“This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). Proof of this unbro-. ken chain of custody is required in order to establish sufficient identification of the *985 item and continuity of possession, so as to assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a ‘reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.’ McCray v. State, 548 So.2d 573, 576 (Ala.Cr.App.1988). Because the proponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
“The chain of custody is composed of ‘links.’ A ‘link’ is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link’s possession of the item: ‘(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.’ Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
“If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a ‘missing’ link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the ‘link,’ as to one or more criteria or as to one or more links, the result is a “weak’ link. When the link is ‘weak,’ a question of credibility and weight is presented, not one of admissibility.”
Holton, 590 So.2d at 919-20.
In this case, the chain of custody began with Deputy Fowler. He testified that he seized the rolling papers from the appellant’s shirt and the marijuana and hemostats from the appellant’s vehicle. Fowler further testified that he sealed those items in plastic bags, initialed the bags, and locked them in the evidence locker at the Covington County Sheriffs Department. On November 15, 1993, Fowler gave the bags to Investigator Jerome Cobb of the Covington County Sheriffs Department, who transported them to the Department of Forensic Sciences lab in Dothan. Cobb testified that he did not alter the contents in any way. Cobb further testified that he gave the bags to David Thome, an employee at the lab. Thome did not testify at trial.
Mark Crews, a forensic scientist at the Dothan lab, testified that he received the sealed bags from David Thome. He testified that he opened the bags, analyzed the evidence, and then resealed the evidence inside the bags. He then placed the bags in a secure storage area until they were returned to the Covington County Sheriffs Department.
Lieutenant Leo “Sonny” Bedsole of the Covington County Sheriffs Department testified that he picked the bags up at the Dothan lab and returned them to the evidence locker at the sheriffs department. He further testified that the bags had been sealed and initialed by Mark Crews.
The appellant contends that the failure of David Thorne to testify was a “missing link” in the chain of custody. We disagree. When a link and all three criteria under Holton are proven by circumstantial evidence, it is a “weak” rather than a “missing” link. Holton, 590 So.2d at 920. “When the link is ‘weak,’ a question of credibility and weight is presented, not one of admissibility.” Holton, 590 So.2d at 920. The state presented evidence that the sealed bags were given to Thorne and that they were received from Thome without alteration. He was positively identified as the “weak link.” The record reflects that the three Holton requirements for this link were adequately proven by circumstantial evidence. There was no “missing link” here.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.